COUNTY OF MAHNOMEN v. P. L. KLYVER AND OTHERS.[1]

May 23, 1930.

Nos. 27,909, 27,910, 27,911.

[1]Reported in 230 N. W. 891.

424

*Robert Pearson,* County Attorney, and *O'Brien, Horn & Stringer,* for appellant.

*Johnston & Carman,* for respondents.

OLSEN, C.

Three cases, tried together, and appeals by plaintiff from the judgment entered in each case.

Plaintiff sued to have certain county warrants, issued to the Security State Bank of Mahnomen but now held and owned by L. O. LaQua, Mary C. Weiser and Lars Ide, defendants respectively in the three actions, set off and satisfied by an indebtedness owing by said bank to the plaintiff. For brevity the above named defendants will hereinafter be referred to as the defendants, the above named bank as the bank, and Mahnomen county as the county. The defendants denied that the county had any right of set-off, alleged that any right of set-off had been waived, presented their respective county warrants, and asked recovery thereon against the county. The court found in defendants' favor and awarded judgment to each of them for recovery upon their respective county warrants.

As we read the findings of the court it based its decision on two grounds: First, that there was a compromise settlement between the county and the bank whereby the time of payment of the indebtedness of the bank to the county was extended, and it was in effect agreed that these warrants were to be used by the bank to raise money for their joint benefit and to be without set-off; second, that by the agreements, actions, and conduct of the county officers and the county board the county waived any right of set-off against these warrants.

The county, plaintiff here, challenges the sufficiency of the evidence to sustain the court's findings. It moved for amended findings and conclusions, and the motion was denied. There is practically no conflict in the evidence. There was some dispute as to the solvency of the bank after its reorganization. The court found that it was then solvent, and that finding is not now challenged. The questions here presented are whether the findings of the court, other than the uncontested finding of solvency above referred to, are sustained by the undisputed evidence and whether the findings sustain the conclusions of law. If the court was right, either in finding that there was a valid agreement or compromise and settle-

ment whereby the time of payment of the indebtedness of the bank was extended and the warrants were to be used to raise money for the joint benefit of the county and the bank and be without offset, or that, by the agreements, actions, and conduct of the county officers and the county board any right of offset against these warrants was waived by the county, then, in either such case, the decision must stand.

An outline of the facts seems necessary. Prior to June 25, 1923, the bank was a going concern, presumed to be solvent. It had been duly designated as a depository for county funds and had given the county a statutory bond in the amount of $100,000 to secure county deposits. The sureties on the bond were five individuals. On June 25, 1923, the bank closed and was taken over by the banking department for liquidation. At the time it closed it was indebted to the county for county deposits in the amount of $43,792.81. The bank remained in the hands of the department until December 10, 1925. During that period the banking department was unable to liquidate the bank and failed, or was unable, to realize sufficient money from the assets of the bank to pay any dividends or to make any payment to the county on its indebtedness. The bank was insolvent, and the sureties on the depository bond held by the county were practically insolvent. No effort was made by the county to collect from the sureties by any legal action during that time. The county was in a position where it was certain to suffer substantial, if not total, loss of its large claim against the bank and its sureties unless the bank was again placed in a solvent position.

In October and November, 1925, negotiations were had and plans made by creditors and stockholders of the bank for its reorganization and reopening in the expectation that the bank would thereby be enabled to pay a portion of its indebtedness to private depositors and pay its debts to the county and other municipalities. The bank was located at the county seat, and the county board and county officials were well acquainted with the situation, were consulted, and took part in the negotiations so far as the county deposit was concerned. An agreement was entered into by the depositors and

stockholders, except municipalities, whereby the depositors agreed to reduce their claims against the bank 65 per cent and extend the time of payment on the remaining 35 per cent, on condition that the stockholders of the bank pay, or cause to be paid, into the bank the sum of $30,000, equivalent to an assessment of $120 per share on the capital stock of $25,000, and that the bank be reopened. The $30,000 was paid to the bank in money or securities. The county board was consulted and fully informed of the agreement. As a part of the negotiations and plan for reopening the bank, the county board, on October 30, 1925, adopted a resolution whereby the county waived all interest upon the debt owing to it by the bank until one year after the reopening of the bank and agreed to accept interest thereon at one per cent per annum after that date, and extended the time of payment so as to make the principal sum payable in instalments in two to six years after the reopening of the bank. The resolution was adopted by unanimous vote. It recited that it was deemed necessary and to be for the best interest of the county, in securing its funds, to grant extension of time for payment and withdrawal thereof, and to aid in the reopening and reorganization of the bank. Attached to the resolution was a consent by the sureties on the county's depository bond to the extension of time and other privileges granted by the resolution.

In order to reopen and enable it to continue business it was necessary for the bank to obtain and have sufficient cash and liquid assets to meet its obligations and comply with the requirements of the banking laws. The county agricultural society owned county fair grounds and buildings upon which the bank held a mortgage amounting with interest to $5,700. In order to aid the bank in reopening, a plan was worked out by the agricultural society and the county board to enable the bank to receive payment of this mortgage. The agricultural society offered to convey its property to the county for the consideration that the county should agree to assume and pay the mortgage to the bank. On November 27, 1925, the county board adopted a resolution reciting that, considering the necessity of reopening the bank to save as far as possible the money of de-

positors and of the county, they accepted the offer of the agricultural society on condition that the bank reopen for business. The transaction was carried out, and on December 24, 1925, a deed of conveyance of the property was delivered to the county, and the county board instructed the auditor to issue and deliver to the bank warrants in the sum of $5,700 in payment of the mortgage. The warrants here in question were on that date issued and delivered to the bank. They were at once presented to the county treasurer for payment and by him marked "Not paid for want of funds." The bank then, on December 30, 1925, sold the warrants to a Detroit bank, and that bank, about January 15, 1926, sold the warrants to these defendants. The arrangements for the reopening of the bank having been completed, it reopened for business on December 10, 1925. The court found that it was then, and at the time these defendants became the owners of the warrants, a solvent and going bank. On or about January 10, 1926, the bank issued to the county ten certificates of deposit aggregating the sum of $43,792.81, being the total amount owing by the bank to the county. The certificates were payable and bore interest according to the terms of the resolution of the county board adopted October 30, 1925, and were delivered to and kept by the county treasurer. The county board acted in entire good faith throughout.

The county was informed in December, 1926, and again early in 1927, that these defendants held the warrants and asked for payment thereof. At that time the bank was a going concern. The holders were informed by the auditor that the matter would be taken up with the county board and the warrants paid as soon as funds were provided.

The bank again failed and was taken over by the superintendent of banks for liquidation on November 5, 1927, and so remains. The bank then was insolvent, and its assets will not pay more than 25 per cent to its creditors. On March 15, 1928, the county treasurer filed with the banking department proof of claim for the county for the full amount of $43,792.81 and interest owing to the county. The claim stated that there were no set-offs or counterclaims. No divi-

dends have yet been paid. Shortly after the second failure of the bank, suit was brought by the county against the sureties on the depository bond for the full amount of $43,792.81 and interest, and on January 27, 1928, and February 21, 1928, judgments for the full amount were recovered against four of the sureties, one surety being then deceased and his estate insolvent. Not to exceed $5,000 can. be collected from the judgment debtors. Not until in November, 1928, was any claim of set-off made. At that time the county auditor wrote to each of the defendants that the county had a set-off against the warrants by reason of the fact that at the time the warrants were assigned, the bank was indebted to the county in an amount in excess of the warrants.

■ On behalf of the county it is claimed that the resolution of the county board of October 30 is invalid because, although in writing, it was not entered upon the minutes of the board or published. The statute requires the county auditor to keep an accurate record of the official proceedings of the county board and requires the county board to cause the official proceedings of its sessions to be published, but does not declare a resolution or agreement made by the county board invalid because not entered upon its minutes or published. It cannot be said that the board kept no record of the resolution, for apparently it was reduced to writing and kept by the auditor. Cases holding that where municipal ordinances are required by charter or law to be published before taking effect are not in point. The resolution, duly adopted, reduced to writing, and acted upon, cannot be held invalid because not otherwise recorded in the minutes of the board or published. Wentworth v. Racine County, 99 Wis. 26, 74 N. W. 551; Jordan & McCallum v. Osceola County, 59 Iowa, 388, 13 N. W. 344.

■ The more serious question is whether the county board had authority to enter into the agreement evidenced by the resolution. That resolves itself into a question of whether the county had the power and authority to make such an agreement, for the county can act only through its officers as its agents, and the county board, except as otherwise provided by law, has and exercises the power

and authority vested in the county. G. S. 1923 (1 Mason, 1927) § 668(2), grants to the county board power:

"To have the care of the county property, and management of the county funds and business, except in cases otherwise provided for, and to make such orders concerning the same as they deem expedient."

This is a very broad grant of power.

By G. S. 1923 (1 Mason, 1927) § 638(1, 4), the county is granted power:

"To sue and be sued. * * *

"To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers."

The powers here granted to the county are no doubt sufficient to authorize the powers granted to the county board by § 668. That the powers so granted to the county and county board are sufficient to authorize the contract evidenced by the resolution in question seems reasonably clear.

The supreme court of Wisconsin, in Washburn County v. Thompson, 99 Wis. 585, 75 N. W. 309, had before it the question of the power of the county board to extend time of payment and make compromise agreement as to the payment of a bank deposit under circumstances somewhat similar to those here presented. The Wisconsin statutes as to the powers of the county and the county board were not any broader than our statutes, if as broad. That court held that where the county had a claim against an insolvent bank and insolvent bondsmen the problem before the county board was how to recover the lost county funds; that in that situation it was competent for the board to make such agreement in the matter as would enable the bank to reopen and resume business with some prospect of the ultimate payment of its indebtedness. The board was held authorized to suspend proceedings to collect its judgment against the bondsmen, to extend the time of payment of its claim against the bank, and to release one of the sureties on the bond.

The statutes referred to were held sufficient to grant such power. Our statutes are sufficient to grant power to the county and the county board to do what was here done.

■ But the counsel for the county urge that the resolution and action of the county board amounted to a designation of the bank as a depository of county funds, or a deposit of its money in the bank, and that such deposits are governed by G. S. 1923 (1 Mason, 1927) §§ 846-849, relating to deposit of county money and designation of depositories. Hence, there being no compliance with these sections, the county board acted illegally. We cannot so hold. There was no intention to designate the bank as a depository or to deposit any further money therein, and none was deposited. In the Wisconsin case above cited it was claimed that the action of the board amounted to a loan of county funds to the bank. That court held that there was no such loan, that the county had no money which it could loan, but had only a doubtful claim against an insolvent bank. The situation here was the same, and the statutes regulating county deposits in banks and the designation of depositories did not apply.

■ We conclude that the court was justified also in finding that the county had waived any right of set-off against these warrants. Having found that the county board had power to make the agreement and compromise of its claim against the bank, as stated, it follows that it had power to waive its right of set-off; and the question remaining is whether the board did waive such right. At the time the board directed the county auditor to issue the warrants the county had the right to offset the amount thereof upon its claim against the bank. If it elected so to do there was no need of issuing any warrants. The county and its board and officers, under the circumstances shown, were chargeable with knowledge that the bank needed these warrants and would use them to obtain money for the bank. In that situation the county board, acting for the county, elected to issue and deliver the warrants to the bank in order to aid the bank in reopening and obtaining money upon these warrants, thereby to place the bank in a solvent condition and to

benefit the county by making it probable that the bank would thus be enabled to pay its indebtedness to the county. The resolutions of the board of October 30 and November 27 and its action in causing the warrants to be issued and delivered quite clearly so show. Without objection the board permitted the bank to sell the warrants to others for full value, and received notice of such sale. It then filed its claim for the full amount with the banking department, without any claim or credit for any set-off, and brought suit against the bondsmen for the full amount of its claim. Not until after all these things had taken place, and about a year after the bank had again failed, did the county officers or anyone claim that the county had any right of set-off. The county will suffer no financial loss by paying the warrants. It received full value for them and will be in no worse position after paying them than it was before it agreed to aid in the reopening of the bank. In fact it should be in a better position because of the $30,000 added by the stockholders to the assets of the bank. The purchasers of the warrants, on the other hand, will lose all they paid, presumably the face value of the warrants and interest, if the set-off is permitted. All the equities are in favor of the holders of the warrants. Both waiver and equitable estoppel are sufficiently shown.

It is suggested that the county board could not extend the time of payment of any part of its claim against the bank beyond the term of office of the members of the board; that a new county board might see fit to repudiate the agreement. We need not here determine that question. So far as appears no new board had come into office up to the time the bank failed, and no action has been taken to repudiate the agreement. If a new board did come in, it might abide by the agreement as well as repudiate same.

The decisive findings of fact and conclusions of law by the trial court are sustained by the evidence and the law, and we find no errors justifying a reversal of the judgments.

Judgments affirmed.

STONE, J. took no part.